1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7
8
9
10
11
12
13

| | |
|---|---|
| BIRKE D.,<br><br>                    Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 3:25-cv-05050-TMC<br><br>ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

14

Plaintiff Birke D. seeks review of the denial of his application for Social Security

15 Disability Insurance Benefits ("DIB"). Plaintiff alleges that the Administrative Law Judge

16 ("ALJ") erred by failing to properly evaluate the medical opinion evidence. *See generally* Dkt. 6.

17 After reviewing the record, the Court concludes that the ALJ erred in finding that Plaintiff is not

18 disabled. The Court accordingly REVERSES the Commissioner's final decision and REMANDS

19 the case for further proceedings.

20

## I.    PROCEDURAL HISTORY

21

Plaintiff's DIB application under 42 U.S.C. § 423 (Title II) was denied both on initial

22 review and on reconsideration. Dkt. 4, Administrative Record ("AR") 14, 1. Plaintiff requested a

23 hearing regarding his application, which was held before the ALJ on November 22, 2023.

24 AR 33–64. On February 28, 2024, the ALJ issued a written decision, finding that Plaintiff was

not disabled under the Social Security Act. AR 17–28. Plaintiff sought review from the Appeals Council, which was denied. AR 1. The Appeals Council concluded that Plaintiff's reasons for challenging the ALJ's decision did not provide a basis for changing the outcome of the decision. AR 1–2. Plaintiff filed a complaint in this Court on January 20, 2025. Dkt. 1. Defendant filed the sealed Administrative Record on March 21, 2025. Dkt. 4. Defendant responded. Dkt. 8. The case is ripe for the Court's consideration.

## II.    BACKGROUND

Plaintiff was born on April 10, 1967, and was 54 years old on the alleged date of disability onset of August 18, 2021.[1] AR 39. Plaintiff completed his college education at the University of Washington in 1997. AR 197. Plaintiff was employed as a salesman at different toy retailers from March 2014 to December 2020. AR 197, 213–22. Plaintiff's most recent job was working part-time as an Activities Assistant at Brookdale Montclair Poulsbo, an assisted living facility, for one week from June 23, 2021 to June 30, 2021. AR 261. Plaintiff left that position because of mental health challenges that Plaintiff stated made it difficult to work and function. AR 42.

According to the ALJ, Plaintiff suffers from the following severe impairment: depressive disorder with history of psychotic features. AR 19. Despite this impairment, the ALJ found that Plaintiff had the following residual function capacity ("RFC"):

> able to understand, remember and carry out simple, repetitive work; with standard work breaks provided; working away from the general public; occasional, superficial interaction with co-workers and supervisors; and occasional, routine workplace changes.

---

[1] The alleged date of disability onset was initially filed as August 20, 2020, *see* AR 65, but Plaintiff's counsel moved to amend the date to August 18, 2021 during his hearing with the ALJ. AR 38–39.

AR 21.

Relying on the analysis of the vocational expert, the ALJ concluded that there were jobs in the national market that Plaintiff could perform: laundry worker, stores laborer, and automobile detailer. AR 27.

### III.    DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999)).

Plaintiff alleges that the ALJ improperly evaluated the medical source opinions of Joel Mitchell, Ph.D., and David Widlan, Ph.D. Dkt. 6 at 1.

### A.    Medical Opinion Evidence

ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion aligns with other evidence from medical and nonmedical sources. *Woods*, 32 F.4th at 791–92; *see also* 20 C.F.R. §§ 404.1520c(c)(1)–(c)(2); 416.920c(c)(1)–(c)(2). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Although ALJs "should endeavor to use these two terms of art—'consistent' and 'supported'—with precision," such exactness is not required when the ALJ's meaning is "clear from context." *Id.* at 793 n.4. Finally, an ALJ's finding that a medical opinion lacks either consistency or supportability is enough to find an opinion

unpersuasive. *See id.* at 792–94 (upholding finding that medical opinion was unpersuasive where ALJ found opinion inconsistent but supported).

"A physician's opinion of disability premised to a large extent upon the claimant's own account of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citation modified). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-reports, as well as on the clinical observations of the patient. But such is the nature of psychiatry." *Id.* Thus, professional clinical interviews and mental status examinations are considered "objective measures and cannot be discounted as a 'self-report.'" *Id.*

### 1.    *Joel Mitchell, Ph.D.*

On May 10, 2022, Dr. Mitchell performed a psychological consultative exam. AR 421–27. As a part of the evaluation, Dr. Mitchell reviewed medical records from Dr. Hoffman, Plaintiff's treating physician, and Plaintiff's self-report. AR 423–25. Dr. Mitchell also conducted a mental status evaluation and a clinical interview. *Id*. Dr. Mitchell opined that "claimant would have substantial difficulty accepting instructions from supervisors at this time" and "claimant would have substantial difficulty maintaining regular attendance and completing a typical workday or workweek without interruptions from a psychiatric condition at this time." AR 426–27. He also stated that based on the clinical interview and medical records, Plaintiff would have "substantial difficulty interacting with co-workers and the public[.]" AR 426.

The ALJ found Dr. Mitchell's opinion unpersuasive because it was largely based on Plaintiff's "allegedly diagnosed panic, obsessive-compulsive disorder, and schizotypal

personality disorder . . . unsupported by exam and the longitudinal records and inconsistent with the assessment of long-time treating physician Dr. Hoffman, who diagnosed and treated the claimant solely for a depressive disorder." AR 24–25. The ALJ found Dr. Mitchell's opinion that Plaintiff would have "substantial difficulty accepting instructions from supervisors, interacting with co-workers and the public, performing work activities on a consistent basis, maintaining regular attendance and completing a typical workday or work week, and in dealing with typical stressors" inconsistent with Dr. Hoffman's assessment. *Id.* (internal quotations omitted). The ALJ also noted that Dr. Mitchell's opinions were inconsistent with the results of the mental status examination he conducted. *Id.* at 25. For example, the ALJ noted that Dr. Mitchell's own exam showed Plaintiff was high functioning, given that he could recall historical events and recall 3/3 objects immediately and after a 5-minute delay. *Id.* In that exam, Plaintiff had correctly identified the current president and governor and the states bordering Washington. *Id.* Plaintiff was also able to perform "4 iteration of serial 7's, spell 'world' forward and backward, and follow a 3-step command." *Id.*

Plaintiff contends that the ALJ's statement that Dr. Mitchell's opinion is based largely on Plaintiff's self-reported diagnoses is speculative, because the opinion shows that Dr. Mitchell considered the longitudinal treatment records. Dkt. 6 at 3. Plaintiff also argues that Dr. Hoffman diagnosed Plaintiff with major depressive order, recurrent, and unspecified, which "is a diagnosis used when a person has experienced multiple depressive episodes, but their symptoms don't quite fit the criteria for a more specific type of depression or dysthymia." *Id*. Plaintiff thus maintains that the depression diagnosis does not rule out findings of panic disorder, obsessive-compulsive disorder, and schizotypal personality disorders. *Id.* Plaintiff further argues that the ALJ erred by finding Plaintiff's performance on the mental status examination as inconsistent

with Dr. Mitchell's findings because he can function when his depressive symptoms are not severe. *Id.*

The Commissioner responds that the ALJ correctly discounted Dr. Mitchell's opinion because it (1) was not supported by the doctor's own mental status examination findings, and (2) was not consistent with the record. Dkt. 8 at 2–3. First, even though Dr. Mitchell opined that Plaintiff would have "substantial difficulty" accepting instructions from supervisors, interacting with coworkers and the public, and performing work activities on a consistent basis without special or additional instructions, the Commissioner argues that "Dr. Mitchell's own mental status examination showed cooperative and open attitude, normal speech and thought process, and a largely euthymic affect, despite some restriction of affect." *Id.* at 2 (citing AR 423–24). The Commissioner also asserts that the "exam showed concentration, persistence, and pace largely within normal limits with only minimal redirection required, appropriate and goal-directed thought process, and intact abstract thinking." *Id.* (citing AR 423–25).

Second, the Commissioner argues that the ALJ did not err in finding Dr. Mitchell's opinion unpersuasive because it was inconsistent with the longitudinal evidence. *Id.* at 3. Specifically, in an intake evaluation in March 2023, the examiner noted that "Plaintiff arrived on time and the mental status examination showed rigid speech, averted eye contact, and flat affect but also normal thought process and content, no psychomotor abnormalities, good dress and grooming, adequate insight and judgment, and intact impulse control," which the Commissioner argues are not suggestive of extensive difficulty working. *Id.*; *see* AR 447. Additionally, the medical records showed that Plaintiff was stable on his antidepressant medication with "very occasional use of clonazepam" for panic attacks. *Id.*; *see* AR 533.

The Court finds no harmful error in the ALJ's evaluation of Dr. Mitchell's medical opinion. The ALJ identified inconsistencies in Plaintiff's performance on the mental status

examination and Dr. Mitchell's opinions on Plaintiff's limitations in the workplace. *See* AR 24–25. For example, Plaintiff was able to perform all the intellectual functioning tasks, which included successfully recalling objects immediately and after five minutes. *See* AR 424–25. The ALJ found Plaintiff's positive performance on the exam contradicted Dr. Mitchell's opinion that Plaintiff would have substantial difficulty performing detailed and complex tasks because of limitations with his working memory. AR 25; *see* AR 424, 426.

Plaintiff's only argument against the ALJ's consistency analysis is that Plaintiff can function well when his depressive symptoms are not severe. *See* Dkt. 6 at 3. But Plaintiff fails to point to additional medical opinion evidence that would dispute the ALJ's assessment. *See id.* Similarly, for the supportability analysis, Plaintiff argues that depressive disorder may encompass symptoms of panic disorder, obsessive-compulsive disorder, and schizotypal personality disorders, but he does not explain why the ALJ erred in rejecting the diagnoses beyond depression. *See id.* And even though Plaintiff later argues that Dr. Mitchell's opinion was not based solely on Plaintiff's reported diagnosis of panic, obsessive-compulsive disorder, and schizotypal personality disorder, he provides no persuasive explanation for this argument. *See id.*

The Court will only address arguments that Plaintiff raises with "specificity." *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (rejecting the plaintiff's conclusory argument because the plaintiff "failed to argue this issue with any specificity in his briefing."). Here, Plaintiff makes no citation to the medical records to dispute the ALJ's consistency or supportability findings, providing only conclusory statements. *See* Dkt. 6 at 3. Since Plaintiff "does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding [his] mental functioning," the ALJ's rejection of the more severe limitations prescribed by Dr. Mitchell is supported by substantial evidence. *Woods*, 32 F.4th at 794.

1

2.    *David Widlan, Ph.D.*

2

3
Dr. Widlan conducted a psychological evaluation and a mental residual function capacity

4
assessment of Plaintiff in October 2023. AR 538–43, 545–49. The psychological evaluation

5
report was based on (1) a clinical interview with Plaintiff, which included a mental status

6
examination, (2) a psychological evaluation by Dr. Mitchell from May 10, 2023, (3) handwritten

7
counseling notes from December 22, 2019 to December 29, 2021, and (4) a psychiatric history

8
self-report from Plaintiff. AR 538.

9
Dr. Widlan noted that Plaintiff reported a history of chronic depression since he was

10
thirteen years old and had been consistently taking medication since 2008. *Id.* Plaintiff reported

11
taking buspirone, fluoxetine, and clonazepam to manage his symptoms. AR 539. Plaintiff

12
indicated that "sometimes he feels so depressed that it is required of him to commit suicide" and

13
"reported frequent suicidal ideation but has not a plan for several years." AR 538. Plaintiff also

14
denied psychosis or paranoid ideation but explained he has chronic difficulty getting along with

15
others, referencing a history of on-the-job issues with his former boss and others. *Id.* Plaintiff

16
stated that he has panic attacks during which he experiences severe anxiety and feels out of

17
control. AR 539. During these attacks, Plaintiff explained that he starts hyperventilating and has

18
severe tremors and feels that "everything is going to come to an end." *Id.* Dr. Widlan also

19
reviewed the psychological evaluation conducted by Dr. Mitchell in 2022. *Id.*

20
In reviewing handwritten counseling notes from Plaintiff's mental health counselor, Dean

21
Lierle, LICSW, Dr. Widlan found that the notes indicated significant depression and anxiety,

22
obsessive behavior, and difficulties at work. *Id.* (summarizing records including AR 351 (note

23
dated November 30, 2021 that Plaintiff "frequently feel[s] depressed"); AR 354 (note dated

24
November 10, 2021 that Plaintiff is having "sensation of severe nervousness and depression");

AR 375 (note dated September 28, 2021 that Plaintiff stated, "Nordstrom last day was so bad I ran a knife across my throat")).

Dr. Widlan also conducted a clinical interview and a mental status examination. AR 540–41. He found that Plaintiff successfully completed serial counting tasks and could spell the word "world" forwards and backwards. AR 541. Additionally, Plaintiff demonstrated a fund of knowledge by being able to name the president and governor, naming the states that border Washington, and identifying the "Israeli attack on Gaza" as a current event. *Id.* Plaintiff's memory was normal as he was able to repeat 5 digits forward and 4 digits backward. *Id.* Dr. Widlan noted, however, that Plaintiff's "behavior was noteworthy." AR 540. He found Plaintiff presented "as a somewhat peculiar individual consistent with his description of his bizarre ideation" and "as quite withdrawn and exhibited characterological dysfunction." *Id.* Dr. Widlan also found his "affect was blunted though congruent with his mood." *Id.* For insight and judgment, Dr. Widlan noted that Plaintiff "appeared to clearly have deficits in insight and judgment" because when he was asked "what he would do if he smelled smoke in a crowded movie theater" Plaintiff responded he would "[l]ook around and leave discreetly." AR 541 (internal quotations omitted).

Based on these findings and his review of the medical record, Dr. Widlan concluded that Plaintiff "suffers from Panic Disorder, Major Depressive Disorder, Obsessive-Compulsive Disorder, and Schizotypal Personality Disorder." AR 542. While Plaintiff could cognitively understand simple instruction, Dr. Widlan opined that more complex tasks would be too challenging. *Id.* Dr. Widlan also concluded that Plaintiff would "not able to negotiate simple social stressors on a consistent and routine basis and this should be considered a serious impairment." *Id.*; *see* AR 548 (noting that Plaintiff could not work on a regular and sustained basis in light of his mental impairment on the mental residual function capacity assessment).

1    The ALJ found Dr. Widlan's opinion unpersuasive and inconsistent with the longitudinal

2    record. AR 25. The ALJ cited one example in support of this conclusion. The ALJ found that the

3    information Plaintiff provided to Dr. Widlan about his panic attacks were inconsistent with

4    statements Plaintiff had made to prior medical providers. *Id.* Specifically, the ALJ explained that

5    in March 2023, Plaintiff had reported to Dr. Shoquist[2] that he recalled a history of panic attacks

6    that manifest under extreme stress, with the most recent episode being three years ago. *Id.*; *see*

7    AR 491. But the ALJ did not find this history apparent in Dr. Widlan's report which noted that

8    Plaintiff said, "he has panic attacks during which he experiences severe anxiety and feels out of

9    control . . . he feels that everything is going to come to an end . . . [and] starts hyperventilating

10   and has severe tremors." AR 25; *see* AR 539. The ALJ determined that Dr. Widlan diagnosed

11   Plaintiff with a panic disorder based on Plaintiff's self-reported symptoms, which was a

12   diagnosis that Plaintiff's primary provider Dr. Hoffman did not make. AR 25.

13       The ALJ next concluded that Plaintiff's "memory performance at this evaluation . . . was

14   inconsistent with his historical performance." *Id.* Because the ALJ found Plaintiff's report and

15   presentation inconsistent with the record and Dr. Widlan's opinions "clearly relied on the

16   [Plaintiff's] report," the ALJ concluded Dr. Widlan's medical opinion was unsupported and

17   unpersuasive. *Id.*

18       The ALJ erred by attributing the entire medical opinion to Plaintiff's self-reported

19   symptoms. To start, Dr. Widlan did not rely wholly on Plaintiff's self-reported symptoms as his

20   report is based on the results of a clinical interview and mental status examination he conducted

21   with Plaintiff. AR 538. *See Buck*, 869 F.3d at 1049; *see also Nygren v. Saul*, 854 F. App'x 874,

22

23   _____

[2] The Court notes that Plaintiff reported "a history of panic attacks that manifest under extreme
24   stress, most recent episode being 3 years ago" to Tina Remillard, not Dr. Shoquist, during an
     intake session at Kitsap Mental Health Services on March 28, 2023. AR 491.

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 10

1    876 (9th Cir. 2021) ("We have made clear that, in the context of mental health evidence, a

2    clinical interview and mental health evaluation are objective measures and cannot be discounted

3    as a 'self-report.'") (citation omitted).

4        Based on his own observations from the mental status exam, Dr. Widlan opined that

5    Plaintiff exhibited challenges in social reasoning and would not be able to endure simple social

6    stressors on a consistent basis. *See* AR 542 ("The Mental Status Examination and clinical

7    interview indicates some deficits in memory and concentration, with more significant deficits in

8    social reasoning. . . . He is not able to negotiate simple social stressors on a consistent and

9    routine basis and this should be considered a serious impairment."). Dr. Widlan also observed

10   that Plaintiff "presented as quite withdrawn and exhibited characterological dysfunction" and

11   that "[h]is affect was blunted though congruent with his mood." AR 540. While Dr. Widlan

12   found that Plaintiff "was able to interpret basic abstraction," he also observed that Plaintiff

13   "exhibited concentration difficulties during the MSE." AR 541. He thus concluded that while

14   Plaintiff could cognitively understand simple instructions, "[m]ore complex tasks would be too

15   challenging for him." AR 542. These findings were made independent of Plaintiff's own

16   reported symptoms and were based on Dr. Widlan's clinical assessment. *See Raicevic v. Saul*,

17   836 F. App'x 569, 569 (9th Cir. 2021) (concluding the ALJ improperly discounted the

18   psychiatric evaluation as subjective despite a clinical interview and objective mental examination

19   findings). It was legal error for the ALJ to discount Dr. Widlan's medical opinion on this basis.

20       Still, the Commissioner argues that the ALJ found Dr. Widlan's opinion unpersuasive

21   because it relied on Plaintiff's subjective reported symptoms instead of objective medical

22   evidence. Dkt. 8 at 3. Specifically, the Commissioner asserts it was Plaintiff's statement to

23   Dr. Widlan that he experienced panic attacks which appeared to have led Dr. Widlan to assess

24

1   marked limitations in several areas related to sustained concentration, pace, and adaptation. *Id.*

2   (citing AR 542–43, 548).

3          Plaintiff contends that Dr. Widlan's diagnosis of panic disorder was based not only on

4   Plaintiff's self-reported symptoms but also his review of medical records and his own

5   examination of Plaintiff. Dkt. 6 at 4. But even if the diagnosis of panic disorder was not

6   warranted, Plaintiff argues that it does not change the fact that subsequent diagnoses of major

7   depressive disorder, obsessive-compulsive disorder, and schizotypal personality disorder are

8   supported by the record, and were not challenged by the ALJ. *Id.*

9          The Court agrees with Plaintiff that even if Dr. Widlan relied on Plaintiff's inconsistent

10   statement to support the panic disorder diagnosis, that alone is not substantial evidence to

11   discredit the entire opinion on grounds of inconsistency. *See Woods*, 32 F.4th at 792–93.

12   Dr. Widlan's reports contained several observations and findings related to Plaintiff's limitations

13   due to his depressive disorder, *see* AR 540–42, an impairment that the ALJ had deemed severe,

14   *see* AR 19. For example, Dr. Widlan referenced a note from Dr. Hoffman on August 18, 2021,

15   where Plaintiff stated that "he doesn't think life is worth living and he has a plan to kill himself

16   which he clearly described to me today how he was going to use the neighbor[']s hos[e] run from

17   his tail pipe into his car[.]" AR 316; *see* AR 539. As a result, Dr. Hoffman increased Plaintiff's

18   dosage of fluoxetine from 20 mg to 40 mg. AR 318. Dr. Widlan opined that Plaintiff "meets all 9

19   symptoms including suicidal ideation, depressed mood, and sleep disturbance" and "is not

20   capable of applying information, interacting with others, persisting and maintaining pace, and

21   adapting in a competitive setting." AR 543. Dr. Widlan made similar observations and findings

22   with respect to the diagnoses of obsessive-compulsive disorder and schizotypal personality

23   disorder. AR 542–43.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

But the ALJ did not address any of those opinions in the decision and wrote only that "I find . . . Dr. Widlan's opinions, which clearly relied on the claimant's report, to be unsupported and unpersuasive." AR 25. The ALJ's reasoning is not supported by substantial evidence because he did not explain how Dr. Widlan's opinions on Plaintiff's limitations (other than panic attacks) were inconsistent or unsupported by the longitudinal record. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[A]lthough we will not fault the agency merely for explaining its decision with less than ideal clarity, . . . we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review.") (citation modified); *Nifateus Y.B. on behalf of I.R.Y.B. v. Comm'r of Soc. Sec.*, No. 3:23-CV-6003-DWC, 2024 WL 3024884, at *3 (W.D. Wash. June 17, 2024) ("Without any further explanation as to why the ALJ found the opinion inadequate, the Court cannot review the ALJ's reasoning on this point.") (citation omitted).

The Commissioner presents additional reasons to discount Dr. Widlan's opinions. The Commissioner argues that even though Dr. Widlan stated that Plaintiff had marked limitation in several areas related to understanding and memory, sustained concentration and pace, social interaction, and adaption, "the mental status examination conducted by Dr. Mitchell showed normal immediate, delayed, and remote memory." Dkt. 8 at 4. Defendant also asserts that "treatment notes indicated that Plaintiff was using medication for panic only very occasionally, was planning to perform with a theater troupe and work on a film project, and was collecting jokes for a new book, all of which are inconsistent with assessed adaptation limitation." *Id.*

But this Court may only consider the credibility determination that the ALJ has provided and cannot affirm a decision based on evidence that the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke

in making its decision.") (citation omitted). The Court is "constrained to review the reasons the ALJ asserts," and concludes, based on the reasons provided above, that the ALJ's evaluation of Dr. Widlan's medical opinion was not supported by substantial evidence. *See Connett*, 340 F.3d at 874.

> **3.** *The ALJ's error was not harmless.*

The ALJ's errors with respect to Dr. Widlan's medical opinion were not harmless. These errors resulted in an RFC that excluded limitations caused by Plaintiff's mental health such as dealing with simple social stressors, interacting with others, and working on a regular and sustained basis. *See* AR 542, 548. Had the ALJ properly evaluated the medical opinion evidence, the RFC may have included these additional limitations, or the ultimate determination of disability may have changed. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective"); *Stramol-Spirz v. Saul*, 848 F. App'x 715, 718 (9th Cir. 2021) ("Because that RFC, in turn, resulted in a non-disability determination, these errors were prejudicial.") (citation omitted); *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) ("When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary.") (citation omitted). Thus, the court remands this case to the agency for further proceedings consistent with this Order.

## IV.    CONCLUSION

Based on these reasons and the relevant record, the Court ORDERS that this matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this order. On remand, the ALJ is instructed to reevaluate Dr. Widlan's medical opinion. The Clerk is directed to enter judgment for Plaintiff and close the case.

1

2        Dated this 28th day of July, 2025.

3

4                                        Tiffany M. Cartwright
                                         United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 15